J-S20026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.A. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| C.L. | | |
| | Appellee | No. 1300 WDA 2015 |

Appeal from the Order August 17, 2015
In the Court of Common Pleas of Allegheny  County
Family Court at No(s): FD 06-00656-002

BEFORE:  PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:　　　　　　　　**FILED MARCH 22, 2016**

Appellant, L.A.[1] ("Mother"), appeals *pro se* from the order entered on August 17, 2015.  We affirm.

The factual background and procedural history of this case are as follows.  Mother and C.L. ("Father") became romantically involved in 2005. Their relationship produced two children, De.L., born in July 2007, and Da.L, born in August 2008 (collectively "the Children).  Mother and Father had a contentious relationship and the Commonwealth charged Father with harassment and related offenses for an incident that occurred in June 2008 at the couple's residence.

---

[1] We identify the parties to this litigation by their initials in order to maintain confidentiality for the Children.

* Retired Senior Judge assigned to the Superior Court

In 2011, Mother planned to relocate to Mississippi. Prior to leaving for Mississippi, Mother left the Children with Father who assumed primary physical custody. After a brief stay in Mississippi, Mother returned to Allegheny County, Pennsylvania. Upon her return, she did not seek custody of the Children on a regular basis. In 2013, however, Mother requested custody of the Children on a more frequent basis. Father permitted Mother to have more custody time.

On October 25, 2011, Mother filed a complaint in custody seeking primary physical custody of the Children. On May 22, 2012, because Mother failed to attend conciliation, the trial court dismissed her complaint. On July 17, 2012, Mother filed a second complaint in custody seeking primary physical custody of the Children. On January 18, 2013, because both parties failed to attend mediation, Mother's second custody complaint was dismissed. On November 21, 2014, the trial court awarded Father primary physical of the Children and awarded Mother partial physical custody.

On April 7, 2014, Mother filed a petition seeking custody modification. On July 24, 2014, a hearing officer filed a report and recommendation finding that Father had primary physical custody of the Children pursuant to court order and that Father maintained primary physical custody of the Children between January 2013 and February 2014. On October 21, 2014, the trial court adopted the hearing officer's recommendation and overruled Mother's objections thereto. On November 21, 2014, the trial court ordered

that Father continue with primary physical custody of the Children and that Mother continue with partial physical custody. On March 27, 2015, after conciliation, the trial court again ordered that Father continue with primary physical custody of the Children and that Mother continue with partial physical custody.

On July 7, 2015, a trial was held on Mother's custody modification petition. On August 14, 2015, the trial court entered findings of fact. On August 17, 2015, the trial court ordered that Father continue with primary physical custody of the Children and that Mother continue with partial physical custody. This timely appeal followed.[2]

Mother raises one issue for our review:

> Whether the [trial] court ignored evidence and witness testimony, and whether the [trial] court show[ed] favoritism toward [F]ather[?]

Mother's Brief at 1 (unnumbered).

In custody cases, our standard and scope of review are as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard [of review] is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may

_____

[2] The trial court did not order Mother to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b).

reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*R.S. v. T.T.*, 113 A.3d 1254, 1257 (Pa. Super. 2015), *appeal denied*, 117 A.3d 298 (Pa. 2015) (citation omitted).

We have stated:

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 208 (Pa. Super. 2015) (citation omitted). Thus, we will only find an abuse of discretion "if in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be manifestly unreasonable or the product of partiality, prejudice, bias, or ill will[.]" *Estate of Sacchetti v. Sacchetti*, 128 A.3d 273, 282 (Pa. Super. 2015) (citation omitted).

With any custody case, the paramount concern is the best interest of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Upon petition, a trial court may modify a custody order if it serves the best interest of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) sets forth the best interest factors that the trial court must consider. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014).

Section 5328(a) outlines the following best interest factors:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent[,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a). Although a trial court must consider all of these factors, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **K.T. v. L.S.**, 118 A.3d 1136, 1160 (Pa. Super. 2015) (citation omitted).

Mother raises a general claim that the trial court abused its discretion.[3] We address Mother's various contentions in that claim seriatim. Mother argues that the trial court abused its discretion by failing to consider the fact that Father abused her in 2008 and harassed her in 2014 and 2015. The trial court, however, explicitly recognized that Father was charged with harassing Mother in 2008. Findings of Fact, 8/14/15, at 2. It nonetheless determined that there was no continued risk of harm to the Children or Mother if Father were awarded primary physical custody of the Children.

---

[3] We could find Mother's lone issue waived for failure to cite to the record and pertinent legal authority. **See** Pa.R.A.P. 2101, 2119(b). In our discretion, however, we decline to find waiver on this basis.

***See id.*** The trial court further found that both parties could provide adequate physical safeguard and supervision of the Children. ***See id.*** Thus, the trial court adequately considered the second section 5328(a) factor.

Next, Mother argues that the trial court erred by finding that Father was more likely than Mother to foster the Children's relationship with the other parent. We conclude that this factual finding is supported by the record. Specifically, Father testified that he was "more lenient" with granting Mother additional custody time with the Children than he was required by court order. N.T., 7/7/15, at 94. In other words, he chose to foster the Children's relationship with Mother by granting her more custody time. Mother argues that Father withheld custody of the Children on certain occasions; however, the trial court determined that, based upon the parties' custody arrangement, Father was within his rights to withhold custody during those periods.

Mother also argues that Father admitted to having a conversation with his brother and his brother's girlfriend, in the Children's presence, which caused the Children to cry. The testimony at trial, however, reveals that the Children were crying because Mother called the police. N.T., 7/7/14, at 119. Furthermore, it was Father's brother and his girlfriend that were speaking poorly of Mother. ***See id.*** at 118.

Mother contends that the trial court erred by finding that her hostility towards Father would prevent her from attempting to foster a relationship

- 7 -

between the Children and Father. The trial transcript reveals Mother's open hostility to Father. For example, Mother's attempt to break up a father-son moment after one of the Children's youth football games at Highmark Stadium evidenced her hostility towards Father. Thus, the trial court's finding that the first section 5328(a) factor weighed in favor of Father is supported by the record and free of legal error.

Next, Mother argues that the trial court's factual finding that Mother did not seek custody of Children upon her return from Mississippi is unsupported by the record. Although Mother testified that she sought custody of the Children upon her return, the trial court found this testimony not credible. Instead, the trial court credited Father's testimony. Father testified that Mother did not seek custody of the Children upon her return from Mississippi. N.T., 7/7/15, at 97. Because, the trial court's factual finding is supported by the record, and because credibility assessments fall within the purview of the trial court, we will not disturb this determination on appeal.

Mother next argues that the trial court erred when finding that Mother does not prioritize education. The trial court's factual finding in this regard is supported by the record. At trial, Mother conceded that the Children had five unexcused absences from school while in her care and were frequently tardy. Furthermore, Father testified that the Children were frequently in trouble at school until he pulled them out of public school and enrolled them

in a charter school. Thus, the trial court's determination that Mother did not prioritize education is supported by the record.

Mother argues that the trial court erred by finding that Mother does not provide a stable environment for the Children. Mother concedes, however, that she left the Pittsburgh area and moved to Mississippi in 2011. Father testified that Mother made no arrangements with him regarding this move and that he made emergency arrangements for the Children's care because of Mother's absence. Furthermore, Father testified that Mother's situation upon returning from Mississippi was not stable. Thus, the trial court's factual finding as to the fourth section 5328 factor is supported by the record.

Finally, Mother contends that the trial court erred when it found that Father attempts to limit his communication with Mother. Mother instead claims that she asked Father to stop contacting her. The trial court's factual finding is supported by the record. At trial, Father testified that he does not unnecessarily communicate with Mother. Instead, he only contacts Mother when required to arrange custody transfers and other necessary tasks. The trial court accepted Father's explanation that he avoids communication with Mother to avoid her anger and insults. Accordingly, the record supports the trial court's factual finding on this issue. Hence, this contention merits no relief.

We have carefully reviewed the notes of testimony from the custody trial and related filings.  We have also reviewed the trial court's findings of fact and Mother's brief on appeal.  We conclude that the trial court properly considered and weighed the section 5328 factors without any evidence of bias, ill will, or prejudice to Mother.  The trial court's factual findings are supported by the record and its legal conclusions are free of error.  Thus, we affirm the trial court's award of primary physical custody to Father.

Order affirmed.

Platt, J., joins this memorandum.

Panella, J., concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/22/2016